CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 10 2010

JOHN F. CORCORAN, CLERK
BY: /s/ Jaylo
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL L. MORRIS, | ) |
| Plaintiff, | ) Case No. 7:08cv00630 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| MICHAEL ASTRUE, | ) United States Magistrate Judge |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Michael L. Morris ("Morris") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). On appeal, Morris argues that the Commissioner erred by improperly evaluating his complaints of pain and by failing to consider his psychological impairments. After carefully reviewing the record, the undersigned finds that the ALJ's decision is amply supported by substantial evidence and **RECOMMENDS** that the Commissioner's decision be affirmed.

I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id.

(alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working;

2

(2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Morris was born in 1965 (Administrative Record, hereinafter "R." 26, 73, 99), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). Morris has a tenth grade education (R. 27, 133, 136-40), and worked as a construction worker prior to his alleged onset date of

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

February 1, 2001. (R. 27, 133, 136-40.) Morris alleges disability due to hepatitis B, hepatitis C, rhabdomylosis, spine problems, fatigue, weakness, breathing problems, and memory problems. (R. 115.) His date last insured is June 30, 2005. (R. 13.)

Morris received notice on March 27, 2007 that his claim for SSI had been approved with an entitlement date of March 1, 2007. (Pl.'s Br. Ex. 1.) However, Morris was notified subsequently that his claims for both DIB and SSI had been denied.[2] (R. 51-60.) His claims were denied again upon reconsideration (R. 64-66), and an administrative hearing was convened before an Administrative Law Judge ("ALJ") on March 5, 2008. (R. 22-46.) In an opinion dated March 24, 2008, the ALJ found that Morris has hepatitis C, hepatitis B, sensitive staphylococcus aureus pneumonia (since December, 2005), and degenerative disc disease (since January, 2007), all of which qualify as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (R. 13.) The ALJ also found that Morris had the RFC to perform light work limited to occasional climbing, kneeling and balancing, but determined he could not work around hazards, ropes, scaffolds, ladders, or in temperature extremes. (R. 18.) Although Morris' impairments prevent him from performing his past relevant work, the ALJ held there are a significant number of jobs in the national economy that he could perform. (R. 19.) Thus, the ALJ found Morris not to be disabled under the Act. (R. 20.) The Appeals Council denied Morris' request for review and this appeal followed. (R. 1-4.)

---

[2] Morris testified at the administrative hearing that he received three months of SSI benefits after his conditional approval. (R. 32.) At the hearing on the parties' cross motions for summary judgment, counsel explained that this subsequent denial of benefits likely followed an internal quality review. (See also R. 32.)

## III.

On appeal, Morris argues that the ALJ improperly evaluated his complaints of pain and erred in concluding his complaints are not credible. However, allegations of pain and other subjective symptoms, without more, are insufficient to establish disability. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). When faced with conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); accord Melvin v. Astrue, No. 606cv32, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007). Accordingly, the ALJ is not required to accept Morris' testimony that he is disabled by pain; instead, the ALJ must determine through an examination of the objective medical record whether Morris has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig, 76 F.3d at 592-94 (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges [h]e suffers.").

Morris' allegations of pain and physical limitations are not supported by the objective evidence of record. There is simply no medical evidence whatsoever to support Morris' disability claim for the period between his alleged onset date, February 1, 2001, and early December, 2005. Upon admission to the hospital in December, 2005, Morris reported having been in "significant good health." (R. 204.) Moreover, Morris testified that between 2001 and 2005, he had "a bad back" but could lift "30, 40 pounds, 50 pounds" and walk, sit and stand. (R. 33-34.)

Beginning December 4, 2005, Morris was hospitalized for six weeks after complaining of fever, muscle aches, and weakness. (R. 175-80.) His condition initially declined, and he suffered respiratory failure, which required a tracheostomy. (R. 176, 212-13.) He was diagnosed with rhabdomyolysis,[3] hepatitis C, hepatitis B, Klebsiella oxytocin and staphylococcus aureus pneumonia,[4] questionable polymyositis,[5] eosinophilia,[6] and chest pain/myocarditis. (R. 175, 176.) Following his discharge on January 16, 2006, Morris apparently spent time in rehabilitation. (R. 175-80; see R. 280.) However, the record contains no medical evidence for the year following his discharge from the hospital.

By January 3, 2007, Morris' condition had improved and his examinations were essentially normal. (R. 283-87.) Morris presented to Dr. Covington of the Carilion Bone and Joint Center "for determination of disability." (R. 283.) Notes reveal Morris "reports he is here due to the migrains [sic] and dizziness with bending over which is the cause of his being unable to work in his occupation." (R. 283.) Upon examination, his

---

[3] Rhabdomylosis is defined as the disintegration or dissolution of muscle, associated with excretion of myoglobin in the urine. Dorland's Illustrated Medical Dictionary 1626 (30th ed. 2003).

[4] Both are types of bacterial pneumonia. See Dorland's Illustrated Medical Dictionary 1464-65 (30th ed. 2003).

[5] Polymyositis is defined as a chronic, progressive inflammatory disease of skeletal muscle, characterized by symmetrical weakness of the limb girdles, neck, and pharynx, usually associated with pain and tenderness. Dorland's Illustrated Medical Dictionary 1482 (30th ed. 2003). In a letter dated January 12, 2007, Dr. Covington noted "[p]olymyositis does not appear to be a supported diagnosis . . . ." (R. 277.)

[6] Eosinophilia is the formation and accumulation of an abnormally large number of eosinophils in the blood. Dorland's Illustrated Medical Dictionary 624 (30th ed. 2003). It is thought that this condition might have been caused by various viral infections. (R. 179.)

motor function was intact, his gait and station normal, there was no appreciable weakness in his limbs, and he had full range of motion. (R. 285.) Dr. Covington noted, "[w]hile [Morris] may not be able to return to carpentry, likely [he] could do something – not for me to determine. If [Morris] believes 'disabled' then needs to apply to SSDI and have their examiners review his exam and complaints." (R. 286.) Dr. Covington further questioned why Morris came to see him in the first place, as Morris had no rehabilitation issues to work on, and Dr. Covington was not a disability physician, nor was he willing to take over Morris' pain management. (R. 286.)

At Morris' request, Dr. Covington drafted a letter concerning reconsideration of his child support obligations. (R. 277.) This letter states that Morris "reports he can't do any work." (R. 277.) Although Dr. Covington reported that Morris' symptoms are not in line with the performance of his former employment as a carpenter, he did not opine in this letter as to whether Morris was disabled from any work. (R. 277.)

Morris thereafter sought treatment for low back pain.[7] On January 31, 2007, examination revealed motor function was intact, no appreciable weakness in limbs, and normal gait and station. (R. 282-82.) Dr. Covington diagnosed him with lumbar back pain and instructed Morris to begin stretching and progressing into gentle conditioning. (R. 282.) Dr. Covington noted that Morris was going to be sore with activity because he has not worked in a long time and prescribed Lortab and Flexeril for pain. (R. 282.) On March 12, 2007, Morris presented to Maria Matsangou, M.D., and examination revealed normal range of motion and strength of 5/5 throughout all four extremities. (R. 323.)

---

[7] Morris reported previously having surgery on his back for "disc problems." (R. 321.) There are no medical records documenting back surgery, and Morris' accounts of when this surgery took place vary. (See R. 29, 313, 321.)

7

Morris was noted to be in mild discomfort because of back pain, and there was point tenderness over the sacral area. (R. 323.) Morris returned to see Dr. Matsangou one week later for the purpose of filling out forms for Medicaid. (R. 318.) He presented to Dr. Erwin on May 4, 2007, complaining of low back pain radiating into his legs, which he rated as a 9 on a scale of 10. (R. 315.) Morris moved gingerly, had restricted motion in the back and tenderness to palpation in the lower lumbar region, and was unable to perform a straight leg raising test because of pain. (R. 316.) Dr. Erwin gave Morris a prescription for enough Lortab to last him until Dr. Matsangou returned to the office. (R. 315.) On May 14, 2007, he returned to see Dr. Matsangou and again complained of lower back pain radiating into his legs. (R. 312-13.) Examination revealed a range of motion within normal limits in the extremities, but straight leg raising reproduced lower back pain. (R. 314.) Morris was tender in the right paraspinal region, had a normal gait and motor strength of 5/5, but had pain in the lower back with movement of the left lower extremity. (R. 314.) An MRI in June, 2007, revealed degenerative disc changes, disc bulging at L4-5, but no nerve compression of the lumbar spine. (R. 308-09.) Dr. Matsangou recommended physical therapy. (R. 309.)

Morris did not seek treatment for any condition again for six months. He presented to Jason Foreman, D.O., on December 4, 2007, complaining of shoulder pain. (R. 360.) Examination revealed decreased range of motion in the right upper extremity with motor strength of 4/5; all other extremities had normal range of motion and strength of 5/5. (R. 362.) Morris asked Dr. Foreman to fill out a Virginia Medicaid disability form. (R. 360.) After Dr. Foreman declined to fill it out for disability of more than one month's duration due to Morris' status as a new patient, Morris became upset, raised his

voice, and was asked to leave the clinic. (R. 360.) The same day, Morris was discharged from Carilion Internal Medicine for violation of his controlled substances agreement, after he tested positive for marijuana and other drugs he was not prescribed. (R. 359; see R. 364-78.) Morris presented to the emergency room on January 21, 2008 complaining of chest pain. (R. 384.) He declined an EKG and was advised to report to the emergency department if his symptoms return or persist. (R. 384-85.)

At the administrative hearing, Morris testified that he can lift no more than a gallon of milk (R. 34), that he must sleep for three to four hours per day (R. 40), and that he can only sit or stand for fifteen to twenty minutes without changing positions. (R. 41.) The objective medical evidence does not support this degree of limitation. The record contains only one disability opinion from a treating physician: Dr. Covington[8] filled out a medical evaluation concerning Temporary Assistance for Needy Families on January 31, 2007, in which he stated that Morris is unable to work in any capacity for greater than ninety days, due to diagnoses of hepatitis C, fatigue, and low back pain. (R. 278.) This opinion stands in sharp contrast to Dr. Covington's statement earlier in the month that Morris could likely do some kind of work, even if he was not able to return to carpentry. (R. 286.) Dr. Covington further noted on the form that Morris is limited to lifting no more than twenty pounds, to sitting or standing for more than one hour at a time, and in bending, stooping or reaching for objects. (R. 279.) The state agency physicians concurred, finding Morris could occasionally lift 20 pounds, frequently lift 10 pounds, stand, sit and/or walk 6 hours in an 8 hour workday (with normal breaks), with unlimited pushing/pulling and no other limitations. (R. 288-94, 328-34). In their opinions, the state

---

[8] It is worth nothing that Dr. Covington only examined Morris twice. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

9

agency physicians gave controlling weight to Dr. Covington's RFC assessment and considered his assertion that Morris could likely "do something" work-related. (R. 294, 334.) Finding the state agency physicians' opinions consistent with those of Morris' treating physicians, the ALJ gave these opinions great weight in his analysis. (R. 19.)

The record supports this RFC determination and the ALJ's credibility assessment. There is no evidence to support Morris' disability claim from 2001 to 2005. While Morris did endure a lengthy hospitalization beginning in December, 2005, his condition improved, he did not seek treatment for nearly a year after being discharged, and his examinations in early 2007 were essentially normal. Morris complained of back and shoulder pain, but the objective findings do not support the degree of limitation he claims. Indeed, medical records indicate that during the period of Morris' claimed disability, he was mowing the lawn (R. 312, 315-16), chopping firewood (R. 384), spending time outdoors and hunting year round (R. 204), and taking an extended trip to New Jersey. (R. 318.)

There are a number of other things in the record that give the undersigned pause with respect to Morris' credibility. For example, Morris testified at the administrative hearing that he has migraine headaches once per week lasting all day, and that he has had this problem since 2001. (R. 38-39.) He stated he raised these concerns recently with his doctors and claimed they told him, "Oh, it's just the rabdomyosis [sic]." (R. 39.) The record reveals that Morris complained to Dr. Covington of migraines at his first visit on January 3, 2007 (R. 283), but never mentioned migraines again to any health care provider. Additionally, Morris testified at the administrative hearing that he has "fevers occasionally if I do too much." (R. 28.) However, he denied having fevers at every

appointment he had with physicians in 2007 (R. 309, 313, 322, 325, 361) and at the emergency room in January, 2008.[9] (R. 384.)

Hospital records indicate the "social history [of] this patient changed many times while in his hospitalization . . . ." (R. 177.) Indeed, his reports of prior injuries also vary. He claims to have had a previous back surgery, but his accounts of when that surgery took place range from 1997-98, to 2000, to 2002. (R. 29, 313, 321.) There is no medical evidence of any surgery in the record. Morris also reported to his doctors that he fractured his clavicle in a motor vehicle accident in 2004 (R. 313), and that he broke his shoulder playing softball in 2003 (R. 360), but neither injury is documented in the medical records.

When asked about his 2005 hospitalization, Morris testified that it lasted three months and that he was in a coma. (R. 28, 29, 35.) Morris asserted that his "spine came through [his] body from laying in bed so long." (R. 28.) He further stated, "I had a hole in my buttocks. It took a long, long time to heal up." (R. 28.) When asked about his prior back surgery, Morris reiterated this same account of his condition:

> A. I went to [Lewis] Gale about 10, 11 years ago. Then, when I laid in bed for three months, my spine came through my buttocks, and that was a major problem for healing that.
>
> Q. This was in 2001?
>
> A. No, 2005.
>
> Q. 2005?
>
> A. That's when I was in a coma. Yes, ma'am.

---

[9] Morris did complain about a fever when he was admitted to the hospital in December, 2005. (R. 176.) This is the only reference to fever in the medical records.

(R. 29.) There is no medical evidence to document his claims that he was ever in the hospital for three months, that he was ever in a coma, or that his spine ever came through his body.

The ALJ must determine whether Morris' testimony about his symptoms is credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989); Melvin, 2007 WL 1960600, at *1; SSR 95-5p. There is plenty of evidence to support the ALJ's credibility determination in this case. As such, it is recommended that the Commissioner's decision be affirmed.

## IV.

Morris further argues that the ALJ erred by improperly considering his mental impairments. Specifically, Morris contends that the ALJ failed to develop the record by denying his request for a consultative psychological evaluation. At the administrative hearing, Morris requested a psychological evaluation "to determine where he is with his cognitive abilities," as he claimed to have significant difficulties with his concentration and memory. (R. 45.) At the time, the ALJ took Morris' request under advisement. (R. 45.) She ultimately declined to send him for a psychological evaluation and determined that Morris' medically determinable mental impairments of depression and anxiety do not cause more than a minimal limitation in his ability to perform basic mental work activities. (R. 14.)

The record contains scant evidence of mental impairment. Morris asserts he has memory and concentration problems, yet he did not communicate any such concerns to

his healthcare providers. Although he testified that he has been confused since he was hospitalized and has not "been right since" (R. 28), he only complained to Dr. Covington of fatigue and dizziness when he presented on January 3, 2007. (R. 283-87.) Dr. Covington noted that Morris seemed "somewhat anxious and easily irritated/agitated today (frustrated)." (R. 285.) However, his examination was otherwise normal, finding Morris alert and oriented with normal cognition and memory, and a mood appropriate to the situation. (R. 285.) Dr. Covington diagnosed Morris with depression with anxiety and prescribed Xanax. (R. 286.) Dr. Covington checked a box on a medical evaluation form indicating Morris required additional evaluation by a mental health provider. (R. 279.) However, on the same date, January 31, 2007, Dr. Covington's examination of Morris was normal: Morris was alert and oriented with normal cognition and memory, and his mood was appropriate to the situation. (R. 281.) Morris made no mention of any mental impairment or cognitive difficulties on that visit, only complaining of fatigue. (R. 280-82.) Likewise, Morris did not complain to Dr. Matsangou of any mental impairment on March 12, 2007 (R. 321-24), nor to Dr. Foreman on December 4, 2007. (R. 360-63.) Dr. Foreman noted Morris' judgment and insight were poor and his mood was labile, but reported Morris' memory was intact and he was oriented to time, place, and person. (R. 362.) At the emergency room in January, 2008, Morris stated he "feels sick and weird, unable to think clearly." (R. 384.) However, he was oriented, had a normal affect, and responded appropriately to questions. (R. 384.) Morris has not sought any mental health treatment, nor has he required hospitalization for any mental impairment.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence

submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (quoting Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) and Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)). A consultative examination may be purchased "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision" on the claim. 20 C.F.R. §§ 404.1519a, 416.919a.

On brief, Morris claims that the ALJ should have referred him for a consultative examination, asserting the record documents that he suffers from depression and anxiety and "due to financial constraints, he was unable to pursue treatment." (Pl.'s Br. 10.) However, he visited doctors nine times between January 2007 and 2008, and never complained of any mental impairment other than "requesting more [X]anax to help him relax" on March 19, 2007 (R. 318), being "unable to think clearly" on January 21, 2008 (R. 384), and needing Valium before his June, 2007 MRI. (R. 312, 315.) Also of note, Morris did not indicate he was limited in memory or concentration in a function report he filled out in the context of his application for disability benefits. (R. 130.) Additionally, Morris stated he has no problem with his personal care (R. 126), cooks light meals (R. 127), drives a car (R. 128), shops for food three times per week (R. 128), handles money (R. 128), gets along with authority figures well (R. 131), and follows instructions (R. 130).

The state agency physicians reviewing his file found that Morris had the medically determinable impairment of anxiety, which has caused no restrictions in activities of daily living, no difficulties in maintaining social functioning, no episodes of decompensation, and only mild difficulties in maintaining concentration, persistence or pace. (R. 305, 345.) The ALJ considered these findings, as well as the medical evidence

and Morris' testimony at the administrative hearing, in which he asserted that he is easily confused, and determined that Morris' mental impairments are not severe.

There is substantial evidence in the record to support this finding. A claimant's statements alone are not enough to establish a physical or mental impairment. 20 C.F.R. § 404.1528(a). Subjective evidence cannot take precedence over objective medical evidence or the lack thereof. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)). Morris complains of difficulty with his memory and cognition, yet he never raised these issues with his doctors. There are minimal references in the medical records to anxiety and depression, for which Morris was prescribed Xanax and Valium, but no episodes of decompensation and no mental health treatment. The lack of evidence establishing mental impairment does not equate to ambiguity in the record warranting a consultative evaluation. On this record, the evidence is more than sufficient to support the ALJ's determination that Morris does not have a severe mental impairment. As such, it is recommended that the ALJ's decision be affirmed.

## V.

At the end of the day, it is not the province of the undersigned to make a disability determination. It is the undersigned's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Morris is totally free of any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total

disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Morris' claim for benefits and in determining that his physical and mental impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the undersigned concludes that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**.

The Clerk is directed to transmit the record in this case to James C. Turk, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

**ENTER**: This 10th day of February, 2010.

Michael F. Urbanski
United States Magistrate Judge